UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| V. | ) ) | Cr. No. 13-75-LM |
| JOHN BRYAN VILLEGAS | ) ) | |

**DEFENDANT'S MOTION FOR A NON-GUIDELINE SENTENCE**

John Bryan Villegas, defendant, respectfully moves through counsel for a non-guideline sentence of twelve months in the custody of the Bureau of Prisons (BOP) followed by one year of supervised release. Grounds follow.

On August 15, 2012 Villegas was arrested on a complaint charging him with extortion. He was released on conditions. On September 18, 2012 he waived indictment and pled guilty to an information charging him with one count of Stalking contrary to 18 U.S.C. § 2261A(2)(A). He remained under pretrial supervision. Sentencing is scheduled for January 7, 2014.

**A. Guidelines Calculations**

The parties agree that the base offense level is 18. *Presentence Investigation Report* ["*PSR*"] ¶ 21. That Villegas harassed the victim on two or more occasions constitutes a "pattern of activity" as defined in Application Note 1 to U.S.S.G. § 2A6.2 and so increases the offense level by 2, *PSR ¶ 22*. There are none of the other aggravating factors listed in § 2A6.2(b)(1): no violation of a court protection order, no bodily injury, and no possession or threatened use of a dangerous weapon. A true first offender, *PSR ¶ 32-37,* Villegas falls in Criminal History Category I. *PSR ¶ 34*. It is undisputed that the applicable advisory guideline sentencing range [GSR] is 24 to 30 months. In the Plea Agreement the government agrees to recommend a

sentence at the low end of that range.  Neither party seeks a departure under the guidelines.

    **B.  A Non-Guidelines Sentence**

The Court should impose a non-guidelines sentence which includes one year in the custody of the BOP and one year of supervised release.  <u>United States v. Booker</u>, 543 U. S.220 (2005), its progeny, and 18 U.S.C. § 3253(a) require the Court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and to impose a sentence which is "sufficient but not greater than necessary" to comply with the enumerated purposes of sentencing.  In light of <u>Gall v United States</u>, 128 S. Ct. 586 (2007), a sentencing court "should not consider itself constrained by the guidelines to the extent that there are sound, case-specific reasons for deviating from them.  Nor should a sentencing court operate in the belief that substantial variances from the guidelines are always beyond the pale." <u>United States v. Martin</u>, 520 F.3d 87, 91 (1st Cir.2008).  The Court may deviate from the GSR if it determines the applicable guideline does not fit the circumstances of the case before it.  <u>Kimbrough v United States</u>, 128 S. Ct. 558, 573-74 (2007).

    **1.  The nature and circumstances of the offense of conviction.**

Paragraph 3 of the Plea Agreement and paragraphs 8-15 of the PSR describe the conduct of conviction. Between July 10 and July 16, 2012 Villagas anonymously sent multiple e-mail messages to "Jane Doe," whose actual name appears in the PSR and who lived in Dover, New Hampshire. He told Doe that he had a lot of "x-rated" photos of her, which he described and several of which he sent her, including two with breasts exposed.  The sexually explicit photographs had been stored in Doe's laptop computer, which was among the items stolen in a April 7, 2012 burglary of her residence.  Villegas demanded that Doe send him additional images

of herself in various sexually explicit poses, which he specified, and threatened that if she did not he would "dox" her, meaning that he would put onto the Internet photographs and personal information about her.  He also threatened to send sexually explicit photos to Doe's former employer, her ex-husband, and her boyfriend.

While Villegas' invasion into Doe's private life was undeniably traumatic for her, Villegas did not carry out his threats to "dox" her. There is no evidence that he ever disclosed her images or personal information to anyone other than Doe herself.   He was arrested on July 17, 2012, *PSR ¶ ¶ 12*, and released on conditions, including that he have no contact with Doe.  He has fully complied with that condition. *PSR ¶ 4*.

**2. The history and characteristics of the defendant.**

Prior to July of 2012 Villegas had a bright professional and personal future.   The criminal conduct that now brings him before the Court was not something which he or anyone who knew him would have predicted.  His federal conviction will remain a permanent stain on his prospects.

Villegas, a 24 year old naturalized citizen, was born in the Philippines. *PSR ¶ 38*.  An only child who lost his father when he was twelve, he nonetheless had a good upbringing and a solid secondary education. *Id*.  He was not exposed to domestic violence, substance abuse, mental health problems, or any other parental neglect or abuse. *Id*.  When he was 15, his mother and stepfather moved to Florida, where they now live and work. *PSR ¶ ¶ 38-39*.  He joined them two years later in 2006.  In 2009 he graduated from a Florida high school, *PSR ¶ 45*, and enlisted in the United States Navy. *PSR ¶ 48*.  He attended the Naval School of Health Sciences and became an Advanced Laboratory Technician. *PSR ¶ 47*.  In 2010, while serving in San Diego, he

met and married his wife Allis after a one year courtship.  *PSR ¶ 40.*

Prior to July of 2012 Villegas has no convictions, no arrests, and no other contacts with law enforcement, either as a juvenile or as an adult.  *PSR ¶ ¶ 32-37.*  He had no history of drug or alcohol abuse or of mental or emotional problems.  *PSR ¶ ¶ 43-44.*  He had never acted out sexually, nor had he ever abused Allis or anybody else.

Prior to July of 2012 Villegas could look forward to promotion and productive service as a Navy corpsman.  The instant offense conduct ended that hope.

Attached as Exhibit 1 is a redacted copy of his service evaluations for July 24 and September 14, 2012.  The July evaluation ranks him at or above standards.  It lists his qualifications and achievements.  It comments on Villegas performance as follows:

> Villegas is a highly motivated Sailor, eager to take on challenging responsibilities !
> - Naval Branch Health Clinic Portsmouth Blue Jacket of the Quarter, 2nd Quarter 2012.
> - Performed over 40,000 laboratory tests on a diverse patient population.  Supervised 10 personnel in proper laboratory procedures, collections, and the proper preparation and shipping procedures for 2, 600 lbs of regulated medical waste, in accordance with OSHA guidelines with zero discrepancies.  Organized and updated clinic MSDS that resulted  in uniform documentation  throughout NHCNE and aided with an outstanding score during the September 2011 College of American Pathologists (CAP) inspection.
> -Motivated instructor; used his superb technical knowledge to instruct six seacoast college students and seven clinic staff members in proper phlebotomy techniques.  Dedicated over 18 hours to leading and instructing nine personnel in proper color guard drilling and ceremony procedures, that resulted in the successful completion of over 30 military and community color guard ceremonies.
> - Equal Opportunity. Drafts and distributes a monthly command equal opportunity newsletter.
> - Command volunteer; helped raise $5,000 for the 2012 NBHC Portsmouth Hospital - Corpsman Birthday Ball.
> **Villegas is a hard charging Sailor already performing at the level of Petty Officer.**

*Exhibit 1, p. 2* (emphasis added).  On September 18, 2012 the recommendation for advancement to E-3/HM3 (medical corpsman) was withdrawn "due to pending federal charges in the United

States District Court of New Hampshire." *Exhibit 1, p. 3.*  On December 28, 2012 Villegas was given an "Other than Honorable " discharge from the United States Navy. *PSR ¶ 48.*

The instant offense also cost Villegas his marriage.  Due to his conduct in the instant offense, Allis left him in August or September of 2012; she obtained a divorce in June of 2013. *PSR ¶ 40.*

Loss of his job and the collapse of his marriage has left Villegas depressed and in debt. *PSR ¶ ¶ 43,49.*  He moved back in with his mother and stepfather in Florida.  He found full-time work as a laboratory technician, earning ten dollars an hour.  *PSR ¶ 46.*

Villegas is remorseful and ashamed about his conduct in 2012.  It appears that, not unlike many others, he let his libido and contemporary technology impair his judgment and so brought undeserved pain to Jane Doe.  A Nothing in his past suggested that would happen.   His behavior while on pretrial release suggests that he poses a minimal risk of re-offending.  He is doing what he can to pull together the shattered pieces of his life.

The offense conduct in this case was  a marked deviation from an otherwise law-abiding life.  It has cost Villegas dearly.  Besides loss of promising military career and his marriage, he will be a federal felon for the rest of his days and so lose civil rights that the rest of us enjoy. Even a presidential pardon would not erase that status from his history.

Villegas' pre-offense conduct, the uncharacteristic and relatively short duration of his offense,  his post-release conduct, and his exemplary record of military service support a non-guideline sentence.  See Porter v. McCollum, 558 U. S. – , 130 S. Ct. 447, 455 ("Our Nation has a long tradition of according leniency to veterans in recognition of their service..."). A sentence of one year in BOP custody followed by one year of supervised release would comport with §

3553(a), which the First Circuit Court of Appeals has described as a "tapestry of factors, through which runs the thread of an overarching . . . parsimony principle" that "instructs district courts to impose a sentence sufficient, but not greater than necessary to accomplish the goals of sentencing"   United States v. Vidal-Reyes, 562 F.3d 43, 48 (1st Cir. 2009), quoting United States v. Rodriguez 527 F.3d 221,227-28 (1st Cir.2008) (internal quotation marks & citation omitted).  It would reflect the nature of the offense conduct and it would give proper weight to Villegas' productive, positive behavior before and after the offense, the professional and personal price he has and will continue to pay for his crime, and the collateral consequences of a federal conviction.  A sentence of one year in prison is a significant sanction.  It would require that Villegas remain in BOP custody for twelve months with no credit for good behavior.  See 18 U.S.C. § 3624(b).   It is a sufficient specific and general deterrent. It would suffice to protect the public from further crimes by Villegas, who poses a minimal risk of re-offending.  A longer sentence is not necessary to provide him with needed educational or vocational training, medical care or other correctional treatment.

  The government opposes the relief sought herein.

  No memorandum has been submitted with this motion because it is contains supporting authority

  WHEREFORE, it is respectfully moved that the Court grant said relief and such other and further relief as may be just.

            Respectfully submitted
            JOHN BRYAN VILLEGAS
            By His Attorney,

/s/Bjorn Lange
Bjorn Lange (NHBA # 1426)
Assistant Federal Public Defender
22 Bridge Street
Concord, NH  03301
(603) 226-7360
Bjorn_Lange@fd.org

## CERTIFICATE OF SERVICE

I, Bjorn Lange, hereby certify that on December 27, 2013, a copy of the above document was served via electronic filing on all counsel of record and that copies will be e-mailed USPO Jodi Gauvin and mailed to the defendant.

/s/Bjorn  Lange
Bjorn Lange